May it please the court, Scott Quinlan for the appellant. I'd like to reserve, if I may, five minutes for rebuttal. This case presents three main issues with several sub-issues. The first one is the motion to suppress. We've always contended that it was the possessory interest in the package which was interfered with. And down below, the government appeared to argue alternatively, but the main one was that it was the privacy interest and that's not what we were claiming. Ms. Garza mailed the package on January 27th. It was to be guaranteed two-day delivery to Las Cruces, New Mexico. And they were going to get their money back if it was not delivered timely. On the evening of the 27th, in the course of the wiretap, the case agent had got additional information giving him probable cause to seize the package. He had additional information that it contained contraband. The next day, he had a postal investigator locate the package. It was found in Texas on its way. I guess they have a clearinghouse there in Texas. Well, counsel, I think we know the facts fairly well. I guess what is interesting, at least from my perspective, is what's the law on this? Because we have, as the Fourth Amendment comes down, the question focuses on reasonable and we have court interpretations of what reasonable are. Why do you think they support this as not reasonable? I mean, is your position that as soon as that was supposed to be delivered, if there's any delay beyond that, that it then violates the Fourth Amendment? No, my position is that they should not have moved the package from Texas to Fresno. They should have, at the time the package was in Texas, applied for a warrant in Texas. It was going to go to New Mexico. But what's your case law that supports that? Because, I mean, if they have reasonable suspicion, why can't they? Okay. It's not reasonable suspicion. This is not an investigatory detention. It's probable cause. So your point is they asked for it to be sent back to California before they got the arrest warrant? Before they even applied for one. Right. So it depends on when probable cause was established. And you believe it was established when they heard the phone call. Is that right? Yes. In fact, they state that they had probable cause at that time. And in the government's opposition, they expressly represented to the trial court in opposition to the motion. The only issue for the court to decide is whether the government's one day delay, including the rerouting of the package or the parcel back to Fresno, unlawfully interfered with Garza's Fourth Amendment privacy interest. And they were secure. They acknowledged that they had probable cause. In the affidavit in support of the warrant in Fresno. The agent acknowledges that he had probable cause. Says after listening to the wiretap at 918 p.m., this is at 3 ER 440. He says, based on my training and experience conversations with other experienced narcotics investigators and knowledge of this investigation, I believe the above mentioned conversations involved J.R. and Garza sending the parcel with narcotics to U.M. 9, who's the Las Cruces, New Mexico person. And so I guess I'm just trying to understand what the through line is on the cases here, because it seems to me that the cases establish in the Fourth Amendment context, if there's undue delay or the government's sitting on their hands. They that's a Fourth Amendment violation. How do you think that was met here? Because it seems to me that they moved fairly quickly. I mean, within three days total, didn't they? Yes. But if they have probable probable cause, they have to apply for a warrant unless there's an exigent circumstance that excuses that under USP Lakata. The court says that if they have probable cause and they don't apply for a warrant and there's no exigent circumstances, then that's a violation. So you are you. I just want to be clear. You are not relying on the argument that the three days was too long between when, you know, the package was. Well, it was really only one day that between when the package was supposed to be delivered and it was ultimately seized. You are saying they didn't apply for a warrant on the first day of that three day period. They did it on the second day of that three day period. I'm saying when they located it in Texas, which was the day after it was mailed, had probable cause on the evening of the day it was mailed. When they when they located it, they should have then applied for a warrant. To seize it or search it. But they did not. They exercised dominion and control over the package by requiring by requesting it to be sent back to directing it. Yeah. Yes, exactly. And the case law allows them to hold the package while while they apply for a warrant. But that would have been in Texas. Alternatively, they could have allowed the package to proceed to Las Cruces, New Mexico, and had a warrant waiting for them there under Rule 41. And under the en banc case, U.S.B. U.S.Cold. I forget what the site is. I've cited it in here. But so it didn't get. I'm sorry. Did you have a question? Well, I would just ask you, it looks like you're saying that the warrant should have been applied for on Friday. A probable cause as soon as soon as they located it, they should have applied for the warrant. And that was that was Friday. Yes. Friday. OK. So then. And by exercising dominion and control over the package against the interests of my client, her interests, having it sent on to Las Cruces, New Mexico, it's not going to get there at all because they've exercised dominion and control. They're sending it back to Fresno. So it lands back in Fresno on the day that is guaranteed delivery in New Mexico. Can you address the Gill case? Because I thought in Gill, correct me if I'm wrong, that there was a six day period where there was no warrant, but but a detention like that, you know, detention of the package of the material. So why wouldn't Gill suggest that this is reasonable where it's only I mean, at this point, we're only talking about one or two days. Before the warrant is actually applied for. Right. In Gill, my recollection is it's an investigative detention case. And so here you just think there's no. Oh, no, they had probable cause when they went looking for the package to to to seize it. You're talking about Gill? No, no. In my case, your case in Gill, it was an investigatory detention case. So you're saying that that delay had to that delay was caused by they still didn't have probable cause. They were still investigating. Yes. And that's all the case laws pretty uniform on that. You know, if you're investigating it and it's a reasonable investigation, you're making reasonable efforts. Then that that's fine. You know, you can detain it while you're investigating it. But that's not what this what happened in this case. They they had probable cause. They found it and they should have applied for a warrant then. And instead, by by exercising dominion and control over it, by shipping it back to Fresno, that was an illegal seizure. OK. The second issue, if I may, is related to that, is that my client was arrested solely on what the contents of that package. And that's on on this issue. Doesn't it just rise or fall with with your argument on the first issue? Yes. I mean, that's what I wondered. I didn't know if you had any additional arguments. It seems to me these rise or fall together. I agree. OK. The deliberate indifference instruction, which is another issue that I've raised. I think. And I in my points, authorities in support of you said deliberate indifference, you're talking about deliberate ignorance. Pardon me. That's why I just want to make sure I make that mistake all the time. Yeah, I'm sorry. I think that the instruction, if it was going to be given, it should have tracked U.S. which is a district court case where it says you may find that the defendant acted with the requisite knowledge as to the nature of the substances for either count one or two. If you find beyond a reasonable doubt that the defendant believed that there was a high probability that the substances were regulated by federal drug abuse laws and that he took deliberate actions to avoid learning that fact. I think that would have summed it up in a nutshell. What happened in this case is that my client mails a package after she mails the package. Which he gets back in the car with J.R., she asked him what was in it or the subject comes up because he tells her that it had pills in it. It never had pills in it. And so if deliberate indifference were to apply to that situation, it should be whether or not she had sufficient knowledge to believe that the package contained a federal isn't that basically what the instruction said. For me, that's instruction number 17. No, but I think my point is the argument you're making is basically what the instruction said. I mean, the instruction said, if you find enough evidence that you must find that defendant acted knowingly. And then it says, first, the defendant was you can do this if the first the defendant was aware of a high probability that drugs were in the package. Why doesn't that address the concern that you were just outlining? Because she has stated and the government put in to evidence that she didn't know what was in the pills. And so to say that she was aware of a high probability that drugs were in the package does not reach the question of whether or not she was aware that the package contained. But then it goes on to say, second, the defendant deliberately avoided learning the truth. So that's a requirement. And then it also says you may not find such knowledge if you find that the defendant actually believe that no drugs were in the package. True. So why does I don't understand why that doesn't solve the problem that you're I mean, you're right. We can't just impute knowledge that isn't there. But we also can't allow a defendant to actually know. But, you know, but not. Right. But but intentionally not now. In order to apply this instruction, the defendant has to deliberately on her own avoided finding out the facts. And in this case, she was lied to about the facts by J.R. And so the deliberate indifference instruction shouldn't apply in that instance. It doesn't. It seems to me there's enough circumstantial evidence that she knew what was going on when she said, we can't be doing this to her cousin or brother, I guess, was her cousin, you know, so. It was really, in my view, up to the jury to decide whether her statements were sufficient to meet the instruction. And, you know, if the instruction seemed, you know. Is compliant with with the law, then. I don't agree with you, shall we say. And then the second issue that I raised on this instruction was that I didn't think it should apply to the conspiracy count. And it was. I, I submit that. That by saying that the defendant acted knowingly. Your time's out. I'll give you some time for rebuttal if. Thank you very much. Yeah, thank you. Good morning, your honors. May it please the court. Justin Julio for the United States. Your honors, I'd like to start with Judge Nelson's question early on that you want to understand the through line of the cases that deal with seizures of an item in the mail stream. And this court has a rule that it applies to those cases that developed early on in Al Dazs in 1990. And it goes all the way through Jefferson in 2009. And the rule is that a person who tenders a package to the mail stream gives up their possessory interest, except for their limited interest in timely delivery of the package. That rule makes sense because when they hand the package to the mail stream, the package is going to be handled by many people. It's going to be shipped in all different sorts of places, just like in this case, it was going from Fresno, California, to New Mexico. But it went to Texas out of the way, went past New Mexico on the way. And so an individual doesn't have the same possessory interest in a package that they would, for example, in a bag they're carrying with them. Okay, so that makes sense to me. But at the end of the day, there still is this claim that they didn't seek a search warrant. Remind me in Gill. In Gill, was there was no – is that the difference, that there was an investigatory search in Gill? Your Honor, there – so in Gill, there was an investigatory detention. There was a reasonable suspicion detention.  I said search, but obviously I meant detention, yeah. For a period of time, there was, Your Honor, an investigatory detention. I believe they – that package was initially detained in California. It was to go to Seattle, and so it was detained in California, and the court found that the brief detention in California was supported by reasonable suspicion. And then it was sent – it was redirected. Instead of going to the recipient in Seattle, it went to another post office for further investigation and detention in Seattle. And I believe there was a drug dog sniff at some point there. There was, like Your Honor said, a five- or six-day period from when it was supposed to be delivered to when the search warrant was obtained. At a certain point, reasonable suspicion developed into probable cause, and then it was further detained under probable cause until a warrant was obtained. And that's what we have. Do we know that – do we know in Gill? Because that seems to be their argument here is that at some point before it was redirected, reasonable suspicion had turned into probable cause, and then you delayed getting the search warrant. So I'm wondering what the analogy is in Gill. If at some point reasonable suspicion turned into probable cause, can we delineate that from the six-day period in Gill? I don't remember now, Your Honor, on what day the drug dog sniff was. But there would have been a period when reasonable suspicion – and it happens in every case when reasonable suspicion develops into probable cause. And what our case law, what the Ninth Circuit case law says in the Lozano case, which we cite in our brief, 623 F. 3rd. 1055, that case deals with initial detention on reasonable suspicion is – the case law supports that initial detention. And then continued detention, once you develop probable cause, is supported. The agents can continue to detain a package because some time is needed once you develop probable cause to apply for – write a search warrant, apply for a search warrant. But doesn't it – don't the facts here just show that the government agents and the – they wanted to go back to Fresno because for their convenience it was a better place to get the warrant? Was there any other reason that they delayed? Your Honor, yes, there is another reason for the rerouting to Fresno, and that was they were trying to act reasonably to get the warrant as quickly as possible. Special Agent Varela was the affiant on the warrant, and he submitted a declaration in support of the government's opposition to the defendant's motion to suppress. Isn't that speculation, how long it would have taken to get a warrant in Las Cruces or Texas, I guess it would be? Two points on that, Your Honor. I don't believe it was speculation because the agent testified based on his training and experience in getting out-of-district search warrants that it takes time, and he explained why. The AUSA in this case, myself, was familiar with the case, could review the warrant quickly and get it to a judge quickly. This was happening on a Friday and Saturday. The warrant was applied on a Saturday. In another district, he knew, the agent asserted, that we'd have to find another assistant U.S. attorney out there, perhaps another agent, to both review the search warrant and get a judge in the other district to sign the warrant. Reviewing a search warrant takes more time when you're not familiar with the facts of the case. And so I'll put all that aside. There is evidence in the record, uncontested evidence, that this was the more reasonable route, but the court doesn't have to find that, and the district court didn't find that. Because the touchstone is reasonableness, objective reasonableness. And so the court could say that the agents here acted objectively, reasonably. Whether they would have held the package in another district or sent it back to Fresno, the locus of the investigation, either could have been reasonable approaches. And the question really for the court, though, isn't the new rule that the defendant is asking for here. They're asking the court to apply a new rule that the court should judge a detention based on the actions of agents and the location of where the detention occurs, as opposed to the duration of the detention. The case law in the Ninth Circuit in this court holds that because the interest is in timely delivery, the analysis for the court is the duration of the detention from when the package was supposed to be delivered to when the warrant was obtained. And your position is that reasonable suspicion versus probable cause in obtaining the search warrant is not relevant or is just a factor that is relevant in that overall time period? Your Honor, probable cause is a greater level of suspicion. The government has a greater interest in being able to detain and hold that package if they had probable cause as opposed to reasonable suspicion earlier on. That's the district court declined to adopt a new rule that's unfounded in case law that if agents have probable cause, then they had to apply for a warrant immediately in the district where the package is. There's no Ninth Circuit case law for that proposition. Well, I guess I agree with – I think you're right. There's no Ninth Circuit case law for that. But it does seem to me that – I mean, it maybe doesn't matter in this case. But once there is – I mean, when there's reasonable suspicion, you can't go get a search warrant. When there's probable cause, you can. So it is an odd situation where it would be odd to penalize them for not getting a search warrant when they can. But once they could get it, then you assume that you're going to go to a judge. Here, it was only a day. I mean that's what I still strike. That's why I just don't think this is the case to flesh this out. Your Honor, I'd make two points on that. And the first is that the district court did not find, like the government asserted and like the defense asserts, that there was probable cause when the package was rerouted. The district court at 1 ER 73 held that there was reasonable suspicion at the time of the rerouting of the package, that actually the agent didn't yet have probable cause, and it was over the course of the next day when he did some further investigation, including looking into mailing records from Fresno to the address that this package was being sent to. The search warrant included some additional facts, like other packages that had been mailed to that location, and that eventually he got to probable cause in the search warrant because the application was sent. When did he get to probable cause? It wasn't Thursday when they overheard the phone call? The district court did not find that, that it was when they overheard the phone call. The district court found that by Saturday afternoon when the government submitted the affidavit to the judge, which is also the same time when the package was set to be delivered. The warrant was submitted at the same time the package arrived in Fresno on Saturday, and by Saturday afternoon when it was scheduled to be delivered, a warrant had been submitted then on a Saturday to the judge. And so the district court found that by that time probable cause existed, but not necessarily at the time that the package was rerouted. I think that that analysis is not necessary. The court can note that in this case this isn't the situation that you're referring to, Judge Nelson, where there is a finding of probable cause at the time of the rerouting. So the record doesn't bind the court in that way. But more importantly, though, the bigger issue is that the detention that Ms. Garza's possessory interest in timely delivery of the package didn't arise until Saturday afternoon, and the warrant was obtained on Sunday morning at 10 a.m. And this is on a weekend. And the warrant had been submitted by the time her possessory interest arose. And so ultimately the rerouting of the package, the analysis for the court, was where the actions of the government was the time period that it took the government reasonable. And in this case it's less than 24 hours. I have another question for you that's related here. Why should the possessory interest of the sender be tied to timely delivery? That is, how do you reconcile sender cases like Van Leeuwen and Das, I guess it is, being decided without any reference to timely delivery? Yes, Your Honor. So two answers to that. Number one, the rule is there's a through rule in both the sender cases and in the recipient cases. That rule, so the Gill court was a sender. The Gill case was a sender case. The England case was a sender case. Both of those cases list the same rule, that timely delivery of the package is the only interest that a person has in the package. And in Gill, the government didn't argue. So in Gill when the reasonable suspicion occurred when the postal employee pulled the package out of the mail in California and then sends it to Seattle, the court looked at whether there was reasonable suspicion at the time the postal employee, which was ten minutes after the package was delivered to the postal employee, he pulls it out of the mail stream, and the court went into analysis of whether there was reasonable suspicion at that time. But there's an important footnote there where the court says the government didn't argue that it didn't need reasonable suspicion at that time. So we're not going to address that. Instead, we're going to assume that the government did. And Judge Gould, in his concurrence, takes that point on and says it's clear the government doesn't need reasonable suspicion at that time, before the delivery time. And Judge Gould's concurrence is picked up later in a recipient case, but saying that that is the rule. The Jefferson case in 2009 cites to Judge Gould's position. I believe the Hong case also cites to that, that that is clearly the rule. And that rule is cited in recipient cases and in sender cases. And so I think that this court's precedent is clear that the interest is the same, that it's in timely delivery. And I think that rule makes sense because when a person tenders a package to the mail stream, they no longer have possession of it. And so the only interest left, other than secrecy of its contents, which is not violated here, is in that timely delivery. That's all they have left is they believe that package was going to be delivered at a particular time. And, Your Honors, I'd like to turn quickly to deliberate ignorance, and two points to make there. The first is the form of the instruction. My friend on the other side mentions this district court case that had a different form instruction. Here, the court applied the Ninth Circuit's model instruction. And what's important is all the cases cited by the defendant in asking for a modification of that instruction are all analog cases where the issue, the contested issue, was everyone agrees we're shipping drugs of some sort, but the fight instead is over is it federally controlled substances or are these legal substances? That fight didn't exist in this case, and that district court found that in rejecting the modification to the deliberate ignorance instruction. Here, the fight was over whether she was mailing innocent items, shoes, and the defense's cross-examination of the agents in the closing makes that point clear. And the only hook that the defendant cites to make this a fight over whether it's a federally controlled substance is on cross-examination of a DEA chemist. The defense elicited testimony that the chemist had on occasion, rare occasion, tested an M30 pill that they usually contain fentanyl that didn't contain fentanyl. But that abstract piece of testimony didn't make that a material issue in the case. The district court found that the substances at issue here, M30 pills, which contain fentanyl, cocaine, and methamphetamine, that there was no fight over whether if persons knew they were mailing those items, whether they were federally controlled or not. And so the idea that the model instruction would have to be changed just based on the chance that in some cases fake drugs could be found, that could be elicited in any drug case. The model was modeled right off the model with one change, package instead of drugs in a car. That was the only change to that instruction. And I see that my time is running out. And so I would ask the court to affirm the decision of the district court. I have a few more seconds if there's any other questions the court has. I think so. Thank you. We'll give you one minute for rebuttal. Thank you. The government expressly represented to the trial court in its response at 3 ER 420 and 421, because the government had probable cause when it seized and redirected the parcel back to the investigating district. And because the government acted reasonably and diligently in obtaining the one day delay, Garza's motion should be denied. They've admitted and they've always admitted down below that at the time the package was seized, they had probable cause. I've cited previously to the court United States v. which stands for holding a package without an exigency upon probable cause and without applying for a warrant violates the Fourth Amendment. That's Ninth Circuit case. And then the en banc case that I couldn't find earlier, Korngold v. United States, that discussed the mailing of an express package, shipping it. But it was the same analysis as to exigent circumstances. And there they said there was nothing to prevent the agents from securing a warrant on a proper showing, either before the package was shipped from Los Angeles or after they arrived in New York. And that's what I'm saying. They could have applied for a warrant under Rule 41 in Texas or they could have applied for one in New Mexico where it was going to be. Thank you. Thank you. Thank you to both counsel for your arguments in the case. The case is now submitted.
judges: SMITH, NELSON, Lefkow